The STATE ex rel. DISTRICT EIGHT REGIONAL ORGANIZING COMMITTEE

v.

CINCINNATI–HAMILTON COUNTY COMMUNITY ACTION AGENCY.

[Cite as *State ex rel. Dist. Eight Regional Organizing Commt. v. Cincinnati–Hamilton Cty. Community Action Commt.*, 192 Ohio App.3d 553, 2011-Ohio-312.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–100099.

Decided Jan. 28, 2011.

Mangano Law Offices Co., L.P.A., Basil W. Mangano, and Ryan K. Hymore, for relator.

Dinsmore & Shohl, L.L.P., Mark C. Bissinger, Michael W. Hawkins, and Lindsay L. Chichester, for respondent.

SUNDERMANN, Judge.

{¶ 1} In this original action, relator District Eight Regional Organizing Committee ("DEROC") seeks a writ of mandamus compelling respondent Cincinnati–Hamilton County Community Action Agency ("CAA") to produce records in response to DEROC's request under the Ohio Public Records Act.[1] We conclude that because CAA is neither a "public office" nor a "person responsible for public records," it does not have a duty to comply with the Public Records Act. We therefore deny the request for the writ.

{¶ 2} CAA is a private, nonprofit organization that operates as a community-action agency, pursuant to R.C. 122.68 through 122.70. Through one of its programs, the Home Weatherization Assistance Program ("HWAP"), it provides home-weatherproofing and energy-efficiency services to qualifying individuals. In April 2009, CAA received a grant for HWAP as part of the American Recovery and Reinvestment Act ("ARRA"). As a grantee, CAA is required to provide a payroll report to the Ohio Department of Development ("DOD") to demonstrate that HWAP employees and subcontractors are being paid prevailing wages.

{¶ 3} On November 16, 2009, DEROC submitted a request to CAA for all certified payroll reports in connection with the ARRA grant. CAA refused to provide the records, contending that it was a private, nonprofit agency that was not subject to the Public Records Act. On February 16, 2010, DEROC filed this mandamus action to compel the production of the records. That same day, CAA, while maintaining that it was not subject to the Public Records Act, delivered payroll reports to DEROC. DEROC argued that the records were not complete, as CAA had redacted employees' names from the records and had not provided payroll records for subcontractors.

{¶ 4} On March 11, 2010, DEROC submitted another request for records from CAA. CAA again refused to produce the requested records, maintaining that it was not required to disclose them. DEROC supplemented its mandamus complaint to include its second request. The parties have filed opposing motions for summary judgment and have provided by stipulation a record on which to decide the motions.

{¶ 5} Summary judgment is proper when (1) there remains no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and with the evidence

---

1. R.C. 149.43.

construed in favor of the party against whom the motion is made, that conclusion is adverse to that party.[2]

{¶ 6} R.C. 149.43(B)(1) provides that "[u]pon request * * *, all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. * * * [U]pon request, a public office or person responsible for public records shall make copies of the requested public record[s] available at cost and within a reasonable period of time." At issue in this case is whether CAA is a public office or a person responsible for public records.

## CAA is not a Public Office

{¶ 7} " 'Public office' includes any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." [3] In *State ex rel. Oriana House, Inc. v. Montgomery*, the Ohio Supreme Court considered how to determine whether a private entity qualifies as a public institution under R.C. 149.011.[4] To make the determination, the court applied a functional-equivalency test. "Under this test, the court must analyze all pertinent factors, including (1) whether the entity performs a governmental function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the entity was created by the government or to avoid the requirements of the Public Records Act." [5] The court acknowledged that R.C. 149.43 should be liberally construed, with any doubt to be resolved in favor of disclosure.[6] But it further held that "the functional-equivalency analysis begins with the presumption that private entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office." [7]

{¶ 8} The parties agree about the applicability of the functional-equivalency test in this case, but they disagree about the result of applying the test.

---

2. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

3. R.C. 149.011(A).

4. 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193.

5. Id., paragraph two of the syllabus.

6. Id. at ¶ 15.

7. Id. at ¶ 26.

Following the guidance of *Oriana House,* we consider each factor of the test in turn.

## Government Function

{¶ 9} DEROC does not dispute the description of CAA's function as stated in the affidavit of Gwen Robinson, the President/Chief Executive Officer of CAA: "CAA * * * provide[s] assistance with employment, utility bills, supportive services, home energy efficiency, early childhood education, housing, youth programs and other related services." With specific regard to the ARRA grant, CAA is providing home weatherization and energy-efficiency services to low-income individuals.

{¶ 10} In *Oriana House,* the Ohio Supreme Court concluded that Oriana House, which operated a community-based correctional facility under a contract with a judicial-corrections board, did perform a governmental function because "[t]he administration of prisons has traditionally been a uniquely governmental function."[8] In this case, while some of the functions described in Robinson's affidavit may fall within the purview of the government, the same cannot be said for the weatherization and energy-efficiency services that are the subject of the ARRA. We conclude that CAA is not performing a traditional governmental function.

## Level of Government Funding

{¶ 11} CAA concedes that it receives substantial governmental funding. But this factor alone is not determinative. In *Oriana House,* the private entity received approximately 88 percent of its revenues from public sources, but the court still determined that it was not a public institution.[9] "The fact that a private entity receives government funds does not convert the entity into a public office for purposes of the Public Records Act."[10] We thus consider the two remaining factors.

## Extent of Government Involvement or Regulation

{¶ 12} In addressing the question of the extent of government involvement or regulation, the Ohio Supreme Court has looked to the control over the day-to-day operations of an entity. In *Oriana House,* the court concluded that the corpora-

---

8. Id. at ¶ 28.

9. Id. at ¶ 32.

10. Id. at ¶ 29. See also *State ex rel. The Repository v. Nova Behavioral Health, Inc.,* 112 Ohio St.3d 338, 2006-Ohio-6713, 859 N.E.2d 936.

tion operated independently from the government because there was "no evidence * * * that any government entity control[led] the day-to-day operations of Oriana House."

{¶ 13} Here, CAA's evidence that it "maintains day-to-day control over the manner in which it implements HWAP services" is not challenged by DEROC. Instead, DEROC points to the regulations that apply to CAA. But the statute providing for the designation of community-action agencies [11] and the accompanying regulations [12] are directed toward ensuring proper use of grant money. The statute and regulations are designed to monitor compliance by requiring the submission of periodic reports from the agencies. They do not control the day-to-day operations of the agency. [13]

### Creation of Entity

{¶ 14} The designation "community action agency" was created by law to facilitate the distribution of block grants under the Community Services Block Grant Act. [14] But CAA itself was established as a private entity in 1964. There is no indication that CAA was established to allow the government "to avoid the requirements of the Public Records Act."

### Weighing of Factors

{¶ 15} Mindful of the presumption that private entities are not subject to the Public Records Act, we conclude that the evidence does not show clearly and convincingly that CAA is the functional equivalent of a public office. Although its designation as a community-action agency was established by the government, and CAA receives a considerable amount of funding from the government, the HWAP program does not carry out a traditional governmental function. Further, the government is not involved in the day-to-day operation of the agency.

### CAA is not a Person Responsible for Records

{¶ 16} Having concluded that CAA is not a public office under R.C. 149.43, we consider whether it is "a person responsible for public records." "In order for a private entity to be subject to R.C. 149.43, (1) it must prepare the records in order to carry out a public office's responsibilities, (2) the public office must be able to monitor the private entity's performance, and (3) the public office

---

11.  R.C. 122.68 through 122.70

12.  Ohio Adm.Code 122:5–2–02 et seq.

13.  See generally *Nova Behavioral Health*.

14.  R.C. 122.68; Section 9901, Title 42, U.S.Code.

must have access to the records for this purpose." [15]   CAA argues that it does not prepare the payroll records sought by DEROC to carry out a public office's responsibilities.

{¶ 17} In *State ex rel. Toledo Blade Co. v. Ohio Bur. of Workers' Comp.*, the Ohio Supreme Court concluded that two limited-liability companies that were organized to facilitate the Ohio Bureau of Workers' Compensation's investment in coins were, in addition to being "public offices," "person[s] responsible for the public record[s]" under R.C. 149.43(B)(1).[16]   The court reasoned that the companies "maintain[ed] records in order to carry out the bureau's investment authority." [17]   And the bureau monitored the companies' performance and had access to the records.

{¶ 18} In this case, under the terms of the ARRA grant, CAA is responsible for providing payroll reports to the DOD. But unlike the companies in *Toledo Blade*, CAA is not maintaining the records to carry out the DOD's responsibilities. Rather, it is providing the department with the records so that the department itself can perform its monitoring responsibility.   We conclude that because the record does not demonstrate that CAA prepared the payroll records to carry out a public office's responsibilities, it is not "a person responsible for public records."

{¶ 19} Because CAA is neither a public office nor a person responsible for public records, we conclude that it is not subject to the Public Records Act. We therefore grant CAA's motion for summary judgment, deny DEROC's motion for summary judgment, and deny DEROC's request for a writ of mandamus.

Writ denied.

CUNNINGHAM, P.J., and HILDEBRANDT, J., concur.

15.   *State ex rel. Cincinnati Enquirer v. Krings* (2001), 93 Ohio St.3d 654, 657, 758 N.E.2d 1135.

16.   106 Ohio St.3d 113, 2005-Ohio-3549, 832 N.E.2d 711, ¶ 20–21.

17.   Id. at ¶ 21.