[Cite as *Hicks v. Newtown*, 2017-Ohio-8952.]

| CHRISTOPHER R. HICKS | Case No. 2017-00612-PQ |
|---|---|
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| VILLAGE OF NEWTOWN | |
| Respondent | |

{¶1} This case arises from Christopher Hicks' request for public records related to the Short Park Project ("project"), which is a joint venture between respondent Village of Newtown ("Newtown") and Miami Valley Christian Academy ("MVCA"), a private K-12 school located in Newtown. The joint venture involves construction of an athletic complex, at MVCA's expense, on property owned by Newtown. A joint venture agreement ("JVA") and first addendum ("Addendum") contain the terms of the agreement, including a provision that "all documents pertaining to the construction, use, maintenance, and any other actions concerning Zone 1, Zone 2, the Facilities, or the Park shall be a public record." (Response, Exhibits A and B, JVA Section 2.4.)

{¶2} Hicks has made multiple public records requests to Newtown for records related to the project. Prior to the instant request, he was provided with over 700 pages of records. (Complaint, p. 1.) On May 24, 2017, Hicks sent this request to Newtown:

{¶3} I am formally requesting these records relating to the Short Park Project:

- Transparent information on all donors/contributors and copies of all donor/contributor agreements.
- Transparent information on the special loan of $500k (source, and specific below market terms).
- Bank/financial statements from any entity specifically set up for this project and/or of any financial accounts relating to this project.

(*Id.* at 2.) On June 5, 2017, Village Solicitor Emily Supinger responded that Newtown had no records responsive to the request in its possession, and that any responsive

records would not fall within the purview of what constitutes a public record until Newtown has such records in its possession. (*Id.* at 3.)

**{¶4}** On July 14, 2017, Hicks filed his complaint under R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B). On July 19, 2017, the court referred the case to mediation. On September 1, 2017, the court was notified that the case was not resolved and that mediation was terminated. On October 26, 2017, the City filed its response and motion to dismiss ("Response"). On October 30, 2017, Hicks filed an additional pleading ("Reply").

**{¶5}** The remedy of production of records is available under R.C. 2743.75 if the court determines that a public office denied an aggrieved person access to public records in violation of R.C. 149.43(B). R.C. 149.43(B)(1) requires a public office to make copies of public records available to any person upon request, within a reasonable period of time. The policy underlying the Public Records Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. "[O]ne of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed." *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997). Therefore, R.C. 149.43 must be construed "liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

**{¶6}** R.C. 2743.75(F)(1) states that public records claims filed thereunder are to be determined through "the ordinary application of statutory law and case law." Case law regarding the alternative statutory remedy of mandamus[1] provides that a relator must establish by "clear and convincing evidence" that he is entitled to relief. *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 14. Therefore, the merits of this claim shall be determined under standard of

---

[1] Formerly R.C. 149.43(C)(1), recodified in 2016 as R.C. 149.43(C)(1)(b), 2016 Sub S.B. No. 321.

clear and convincing evidence, i.e., "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See Hurt v. Liberty Twp.*, 5th Dist. Delaware No. 17CAI050031, 2017-Ohio-7820, ¶ 27-30.

### Motion to Dismiss

{¶7} Newtown moves to dismiss the complaint on the grounds that, 1) the requests for "transparent information" are overly broad requests to create new records, 2) all the requests are for records of MVCA, not of Newtown, and 3) Newtown is not required to access any records maintained by MVCA. In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975). The unsupported conclusions of a complaint are, however, not admitted and are insufficient to withstand a motion to dismiss. *Mitchell* at 193.

### Ambiguous, Overly Broad, and Otherwise Improper Requests

{¶8} In its response, Newtown for the first time denies Hicks' requests for "transparent information" as requiring it to search for information and compile it into new records. (Response at 4.) Hicks does not challenge this argument in his reply. For analysis of this defense, Hicks' requests can be broken out as seeking:

1. transparent information on all donors/contributors relating to the project
2. copies of all donor/contributor agreements relating to the project

3. transparent information on the special loan of $500k relating to the project (source, and specific below market terms)

4. bank/financial statements from any entity specifically set up for the project

5. bank/financial statements of any financial accounts relating to the project

A request to search for information "regarding," or "relating" to, a topic is generally improper. In *State ex rel. Shaughnessy v. Cleveland*, 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, ¶ 10, the Ohio Supreme Court cited examples of improper requests to conduct research, rather than identifying the records sought:

> The Public Records Act does not compel a public office "to do research or to identify records containing selected information." *See State ex rel. Fant v. Tober*, 8th Dist. Cuyahoga No. 63737, 1993 Ohio App. LEXIS 2591, 1993 WL 173743, *1 (Apr. 28, 1993), *aff'd*, 68 Ohio St.3d 117, 1993 Ohio 154, 623 N.E.2d 1202 (1993). *See also Morgan*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, at ¶ 14-15 (request for "[a]ny and all email communications * * * which reference * * * the 'evidence-based model' or education funding in general" was overbroad) (first ellipsis sic); *State ex rel. Thomas v. Ohio State Univ.*, 71 Ohio St.3d 245, 246, 1994 Ohio 261, 643 N.E.2d 126 (1994) (noting denial of writ of mandamus where request for records sought selected information "regarding or related to" any pro-animal-rights action group or individual), citing *Fant.*

*Accord Natl. Fedn. of the Blind of Ohio v. Ohio Rehab. Servs. Comm.*, 10th Dist. Franklin No. 09AP-1177, 2010-Ohio-3384, ¶ 33-35 (request for information "pertaining to" nonpayment of maintenance fees). In response to a question, or request for information, a public office has "no duty under R.C. 149.43 to create new records by searching for and compiling information from existing records." *State ex rel. White v. Goldsberry*, 85 Ohio St.3d 153, 154, 707 N.E.2d 496 (1999); *see also State ex rel. Lanham v. State Adult Parole Auth.*, 80 Ohio St.3d 425, 427, 687 N.E.2d 283 (1997) (request for "qualifications of APA members," rather than specific records). Instead, "'it is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.'" (Citations omitted.) *State ex rel. Zidonis v. Columbus State Community College,* 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d

861, ¶ 21. A public office may deny any request that is ambiguous, overly broad, or does not reasonably identify the records sought. R.C. 149.43(B)(2).

{¶9} Based on the above, I find that the language in requests Nos. 2, 4 and 5 for "copies of all donor/contributor *agreements*" and "bank/financial *statements*" is properly specific. However, I find that the language in requests Nos. 1 and 3 for "*information on all donors/contributors*" and "*information on* the special loan of $500k" improperly requests a search for records containing loosely described information, rather than identifying specific records. *See State ex rel. Oriana House, Inc. v. Montgomery*, 10th Dist. Franklin Nos. 04AP-492, 04AP-504, 2005-Ohio-3377, ¶ 9; *Shaughnessy* at ¶ 10. Hicks did not identify the loan by recipient, or by whom the loan instrument was kept. Further, a public office may deny a request for information from a category of persons or entities, when research is required to establish any entity's membership in the category. *Oriana House, Id*. Request No. 4 for "bank/financial statements from any entity specifically set up for the project" fails to name any such entity, by whom it was "set up," or what function it serves "for the project." I find that Hicks has failed to show by clear and convincing evidence that requests Nos. 1, 3, and 4 reasonably identified the specific records sought. These requests are therefore properly denied.

{¶10} The Public Records Act requires parties to cooperate in clarifying ambiguous and overly broad requests, with the goal of identifying the specific records sought. When such a request is denied, R.C. 149.43(B)(2) requires the public office to

> provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties.

Newtown did not deny the improper requests on this basis prior to Hicks filing this action, or provide Hicks with the required opportunity to revise by informing him of how its records are maintained and accessed. This constitutes a *per se* violation of R.C. 149.43(B)(2). *State ex rel. ESPN v. Ohio State Univ.*, 132 Ohio St.3d 212,

2012-Ohio-2690, 970 N.E.2d 939, ¶ 10-11. However, as in *ESPN*, Hicks does not ask that Newtown be ordered to inform him of the way Newtown maintains its records, and thus is not entitled to relief other than this finding of violation. *Id.* at ¶ 12-15.

{¶11} Although Newtown's denial of requests Nos. 1, 3 and 4 was proper, I note that the parties retain the ability to continue negotiating their respective interests in obtaining and providing records that Hicks seeks, including making new requests that sufficiently specify particular records. *See Gannett GP Media, Inc. v. Ohio Dep't of Pub. Safety*, Ct. of Cl. No. 2017-00051-PQ, 2017-Ohio-4247, ¶ 9-15. Such discussions could include Newtown providing its records retention schedules relevant to the requests, and Hicks narrowing his requests with this and other information obtained through discussion. *Nat'l Fedn. of the Blind of Ohio*, 10th Dist. Franklin No. 09AP-1177, 2010-Ohio-3384, at ¶ 39. The parties are encouraged to cooperate going forward to achieve mutually acceptable resolution of their interests. *See State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 18-20.

**Status of Requested Documents as "Records"**

{¶12} Newtown argues that the requested records, to the extent identified in the request, do not fall under the definition of "public records" of Newtown. Newtown first asserts that the records "are those of MVCA, not Newtown." (Response, p. 3.) However, the same document may serve as a "record" for more than one entity. *State v. Sanchez*, 79 Ohio App.3d 133, 136, 606 N.E.2d 1058 (6th Dist.1992). Regardless of whether they also function as records elsewhere, the only question in this action is whether any of the properly identified documents serve as records of Newtown.

{¶13} Newtown next argues that the terms of JVA Section 2.4 define only certain categories of project documents as "public records," and that subsequent provisions "make abundantly clear" that MVCA does not have to share donor or other financial information with Newtown. (Response, p. 5.) Newtown does not cite any specific "subsequent provisions." In any case, the terms of a contractual agreement do not affect

what documents are "records" of a public office. "A public entity cannot enter into enforceable promises of confidentiality regarding public records." *State ex rel. Findlay Publ. Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 137, 684 N.E.2d 1222 (1997); *see also Teodecki v. Litchfield Twp.*, 9th Dist. Medina No. 14CA0085-M, 2015-Ohio-2309, 38 N.E.2d 355, ¶ 19-25 (a contractual promise of confidentiality with respect to an otherwise public record is void *ab initio*). The reverse would seem to be true as well – the voluntary terms of a contract, like voluntary past disclosure of non-records, cannot make a document a "record" if it does not meet the statutory definition. *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 38. However, the language of the JVA that "all documents pertaining to the construction, use, maintenance, and any other actions concerning Zone 1, Zone 2, the Facilities, or the Park shall be a public record," does serve to waive any argument that such documents were intended to be confidential. The contract language may also serve as evidence of what items are maintained for and accessible to the public office.

{¶14} The only records required to be provided are those meeting the statutory definition of records. R.C. 149.011(G) provides that:

> The term "records" includes "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

Donor/contributor agreements and bank/financial statements, if memorialized on fixed media, meet the first element of the definition of a record as *documents*. Regarding the second element, such documents *created* by Newtown, *received* by Newtown, or *coming under its jurisdiction* as items it was responsible to evaluate or approve would meet this element. The third part of the definition, that records are items that "serve to document" the activities of the office, is broad and inclusive:

> We previously have held that the General Assembly's use of "includes" in *R.C. 149.011(G)* as a preface to the definition of "records" is an indication of expansion rather than constriction, restriction, or limitation and that the statute's use of the phrase "any document" is one encompassing all documents that fit within the statute's definition, regardless of "form or characteristic." * * *. There can be no dispute that there is great breadth in the definition of "records" for the purposes here. Unless otherwise exempted or excepted, almost all documents memorializing the activities of a public office can satisfy the definition of "record." * * * Indeed, any record that a government actor uses to document the organization, policies, functions, decisions, procedures, operations, or other activities of a public office can be classified reasonably as a record.

*Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 20. Thus, any documents that were actually used for Newtown's evaluation of assurances of MVCA's financial resources would meet the third element. In *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 411, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 26-27, a public office used "information from the sealed application to decide whether to approve the settlement," thereby making it a record subject to R.C. 149.43. *Compare State ex rel. Beacon Journal Publishing Co. v. Whitmore*, 83 Ohio St.3d 61, 63, 697 N.E.2d 640 (1998) (letters received, but not relied on for sentencing, were not "records"). *See also State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶¶ 12-14, 20 (proposal considered in settlement negotiation process was a record).

{¶15} To be clear, the Public Records Act does *not* allow a requester to step into the shoes of a public office and demand records that the office has not received or relied on, but *might* use in the future. *State ex rel. Cincinnati Enquirer v. Ronan*, 127 Ohio St.3d 236, 2010-Ohio-5680, 938 N.E.2d 347, ¶ 11-16. Thus, as applied here, the Act requires production only of records that were relied on by Newtown as assurances. Requester provided a link to video of a May 23, 2017 meeting of the Newtown Village Council (Complaint at 4.), during which Mayor Mark Kobasuk states:

> "I met with a member of MVCA last week. He assured me that they have just about 1.5 million dollars. He showed me evidence that I did not receive nor did I ask for any documents, but he assured me and he demonstrated to me that he had 1.5 … or 1.45 million dollars in ready, liquid funds. Now they're not all in a bank account but in today's world a phone call or a keystroke will have those funds delivered to the bank account. So I was shown sufficient evidence that they have nearly 1.5 million dollars at this stage. Since we are in the exploratory stage that is sufficient. If any council member wants to hear more, I will talk about that for the meeting, but I don't want to put it on the record … confidential financial information. But they did demonstrate to me almost 1.5 million dollars in readily accessible funds."[2]

Newtown's minutes of the meeting reflect the mayor's statement as "I also met with a member of MVCA who showed me sufficient evidence that they have just about $1,500,000 in ready liquid funds." (Requester's Additional Pleading– September 26, 2017, Exhibit 2, p. 1.) Although the mayor states that he did not physically handle any documents, I find his statement to be clear and convincing evidence that the member of the MVCA showed him visible "evidence" of financial resources. The evidence was more than just verbal assurance, because the mayor states that the MVCA member "assured me *and he demonstrated to me* that he had 1.5 or 1.45 million dollars in ready, liquid funds." Newtown does not deny that evidence was "shown" to the mayor, noting only that "[w]hat the evidence was is not disclosed." (Response, p. 4, fn. 1.)

{¶16} I find that actions taken to assure adequate project finances, under an express term of the JVA, is a matter "coming under the jurisdiction of" Newtown. *See State ex rel. Cincinnati Enquirer v. Krings*, 93 Ohio St.3d 654, 660, 758 N.E.2d 1135 (2001). Common business practices generally require some documentary evidence of

---

[2] www.youtube.com/embed/YQHK4er4VMA?start=303&end=363, from 5:03 to 6:02, accessed November 20, 2017.

financial resources at the dollar level involved here. Donor/contributor agreements[3] and bank/financial statements, to the extent they were disclosed to Newtown by MVCA as assurances that it has the financial resources to satisfy its contractual obligations, serve to document Newtown's official "functions, * * * decisions, procedures, operations, or other activities" under the agreement. I conclude that any properly requested items utilized by Newtown as assurances that MVCA had adequate financial resources, including documents and images shown to Mayor Kobasuk at his meeting with a member of MVCA, meet the definition of "records" of Newtown. However, if the mayor accepted merely verbal assurance of 1.45 million dollars in ready liquid funds, with no visible evidence of that assertion, then Newtown has no duty to create or provide access to nonexistent records, *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 15.

**Records Relied on for Assurance Must Be "Kept By" Newtown**

{¶17} "'Public record' means records *kept by* any public office." R.C. 149.43(A)(1). "Kept by" means records maintained by the public office as provided by law or under the rules adopted by the relevant records commission (i.e., approved records retention schedules). R.C. 149.40 requires the head of each public office to cause to be made

> such records as are necessary for the adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and for the protection of the legal and financial rights of the state and persons directly affected by the agency's activities.

Under JVA Section 4.8 (Response, p. 41), Newtown's approval of contract awards is "dependent upon MVCA providing Newtown with reasonable assurances that it has the financial resources to satisfy its contractual obligations." The "assurances" provided

---

[3] Donor information kept by a public office is subject to release as public record. *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.*, 65 Ohio St.3d 258, 602 N.E.2d 1159, paragraph 2 of syllabus (1992) (names of donors to a gift-receiving arm of a public university).

would document the functions, decisions, and essential transactions of Newtown, and the requirement of adequate resources appears on its face intended to protect "the legal and financial rights of the state and persons directly affected by the agency's activities." R.C. 149.40; *see State ex rel. Toledo Blade Co. v. Ohio Bureau of Workers' Comp.*, 106 Ohio St.3d 113, 2005-Ohio-3549, 832 N.E.2d 711, ¶ 24 (The public has an unquestioned financial interest in a public office's investment of public funds). Documents utilized as evidence of MVCA's financial ability to satisfy a contractual obligation appear to be records that Newtown is required to maintain.

> Once created, received, or coming under the jurisdiction of a public office, All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions provided for under sections 149.38 to 149.42 of the Revised Code * * *. Those records shall be delivered by outgoing officials and employees to their successors and shall not be otherwise removed, destroyed, mutilated, or transferred unlawfully.

R.C. 149.351(A). Remedies for unlawful removal or transfer of a public office's records include civil actions for injunctive relief and forfeiture, and replevin by the attorney general if requested by the department of administrative services. R.C. 149.351(B); R.C. 149.352; and R.C. Chapter 2737.

{¶18} A public office may not circumvent R.C. 149.43 by delegating maintenance of its records to a private entity. *State ex rel. Findlay Publ. Co. v. Hancock County Bd. of Comm'rs*, 80 Ohio St.3d 134, 137, 684 N.E.2d 1222 (1997); *compare State ex rel. Cincinnati Enquirer v. Cincinnati Bd. of Educ.*, 99 Ohio St.3d 6, 2003-Ohio-2260, 788 N.E.2d 629, ¶ 10-16 (where neither board nor search firm kept resumes of unsuccessful applicants, and the applicants were not agents of the board, court distinguished *Findlay* and found that returned resumes were not "public records"). However, in some circumstances a public office's records may be maintained by a private third party.

Here, MVCA is acting as Newtown's quasi-agent to maintain all documents pertaining to construction and "other actions concerning" the facilities or the park:

> 2.4 MVCA acknowledges and agrees that all documents pertaining to the construction, use, maintenance, and any other actions concerning Zone 1, Zone 2, the Facilities, or the Park shall be a public record under Ohio Revised Code Section 149.43 *and MVCA agrees to maintain all such records in accordance with Newtown's requirements and records retention policies* as adopted by Newtown and as may be amended from time to time. MVCA may meet its obligations under this clause by providing Newtown with copies of all documents that would constitute a public record under this agreement, in which event, Newtown shall maintain the documents as public records.

(Emphasis added.) (Response, p. 41.) In JVA Section 2.1, the parties list certain purposes that would involve "other actions" in executing the project:

> The general purpose of the Ventures shall be to *develop, construct,* use, maintain, replace, rent to third parties, and/or otherwise deal with the Facilities and for *all such other business and purposes incidental or necessary to the same.*

(Response, p. 17.) The statutory duty of Newtown to respond to public records requests concerning financial resources promised in the JVA is, at the very least, a purpose incidental or necessary to the development and construction of the facilities.

{¶19} Newtown does not allege disposal of any documents or images that it reviewed and relied on as "assurances." I conclude that Newtown remains obligated by R.C. 149.351(B)(1) to maintain these records, and to take any necessary steps to retrieve or restore the records to make them available under the Public Records Act. *State ex rel. Toledo Blade* Co. *v. Seneca Cty. Bd. of Comm'rs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 19-41.

**MVCA as the "Functional Equivalent of a Public Office"**

{¶20} Newtown argues that MVCA is not operating as the functional equivalent of a public office, under the following factors established by the Ohio Supreme Court:

(1)   whether the entity performs a governmental function,

(2)   the level of government funding,

(3)   the extent of government involvement or regulation, and

(4)   whether the entity was created by the government or to avoid the requirements of the Public Records Act.

*State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, ¶ 25. The court's analysis "begins with the presumption that private entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office." *Id.* at ¶ 26; *see generally State ex rel. Luken v. Corp. for Findlay Mkt. of Cincinnati*, 2012-Ohio-2074, 972 N.E.2d 607, ¶ 19-27 (1st Dist.). However, the mere fact that an entity is a private, non-profit corporation does not preclude it from being a public office. *State ex rel. Schiffbauer v. Banaszak*, 142 Ohio St.3d 535, 2015-Ohio-1854, 33 N.E.3d 52, ¶ 11; *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.*, 65 Ohio St.3d 258, 260, 602 N.E.2d 1159 (1992).

**{¶21}** Newtown asserts that; (1) the primary purpose of the project is to create athletic facilities for MVCA, and does not involve any delegated authority of Newtown, (2) other than *de minimus* administrative costs, Newtown is providing no funding for the project, (3) Newtown's involvement or regulation of the project involves approval of construction plans and confirming MVCA's compliance with bidding, employment, and other requirements pertaining to the use of public property, and (4) MVCA was not created by the government, or set up to avoid the requirements of the Public Records Act. (Response. p. 7-8.) Hicks asserts that the effect of the joint venture is to withhold financial records from public view, citing the comments of Mayor Kobasuk, *supra*, but does not present any evidence to counter Newtown's other assertions.

**{¶22}** The functions of a governmental subdivision include regulation of the use, maintenance and repair of public grounds, and the provision of public improvements. R.C. 2744.01(C)(2)(e), (l). With respect to governmental funding, the rent-free use of public land by a private party for its facilities constitutes support from public taxation.

*State ex rel. Dist. 1199 v. Lawrence County Gen. Hosp.*, 83 Ohio St.3d 351, 353, 699 N.E.2d 1281 (1998). The JVA provides that Newtown will be involved in planning, enforcement of local health and safety regulations, and oversight of the facilities after completion. There is no evidence in the record that MVCA was created by the government, or that it was created to avoid the Public Records Act.

{¶23} On review of the law, agreements, affidavits, and other evidence, I find that (1) the primary purpose of the project is to create and operate athletic facilities for MVCA, but the project includes performance by MVCA of significant governmental functions including the maintenance and repair of public grounds, and the provision of public improvements, (2) MVCA is receiving substantial government funding in the form of rent-free use of public grounds, and Newtown is expending funds for administrative project costs, (3) Newtown's involvement in regulating the project is substantial but not overwhelming, and (4) MVCA was neither created by the government nor created to avoid the requirements of R.C. 149.43. There is no evidence in the record that any distinct sub-entity of MVCA was created for the project.

{¶24} The project creates a substantial and lengthy intertwining between Newtown and MVCA in the development and management of public land, in part for use by the general public. However, based on the relevant factors, I conclude on balance that there is not clear and convincing evidence that MVCA is acting as the functional equivalent of a public office.

### MVCA as a "Person Responsible for Public Records" of Newtown

{¶25} R.C. 149.43(C)(1) permits enforcement action against either "the public office or the person responsible for the public record." "This language 'manifests an intent to afford access to public records, even when a private entity is responsible for the records.'" *State ex rel. Cincinnati Enquirer v. Krings, 93 Ohio St.3d 654, 657, 758 N.E.2d 1135 (2001).* A private entity such as MVCA is "a person responsible for public records" under the Public Records Act where:

(1)   the private entity prepares records in order to carry out a public office's responsibilities;
(2)   the public office is able to monitor the private entity's performance; and
(3)   the public office has access to the records for this purpose.

*State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 36. A private entity may be a person responsible for public records regardless of whether the private entity is acting as the public office's agent. *State ex rel. Mazzaro v. Ferguson,* 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990)*.*

{¶26} Fundamentally, "governmental entities cannot conceal information concerning public duties by delegating these duties to a private entity." *Krings* at 659*.* The public has a "right of access to public records, regardless of where they are physically located, or in whose possession they may be." *Mazzaro* at 40. When Hamilton County leased the Findlay Market to a private non-profit for management and subleasing, the private entity was found to be a "person responsible for public records." *Luken, 2012-Ohio-2074, 972 N.E.2d 607,* at ¶¶ 5-10, 28-33. The private entity was required to keep financial records of operations, and the city had the right to examine the records. *Id.* The court found the city's ownership of the land, and interest in the continued operation of the market, constituted government responsibilities. *Id.* Newtown has the same duty here to retrieve and provide copies of records it used in its actions to execute the project, regardless of where they are located.

{¶27} Under the JVA, MVCA is to construct certain sports facilities. However, "[n]one of the Facilities in Zone 1 or·Zone 2 of the Park will be for the exclusive use of MVCA. MVCA will only have first priority scheduling for all Facilities in Zone 1 and Zone 2 for school functions and activities. The Facilities will then be available for public use, rental purposes or other recreational use and purposes." (Response, p. 21, JVA Section 5.2.) Further, "[a]ll of the improvements and recreational facilities in Zone 3 of the Park will be controlled exclusively by Newtown." (*Id.*, Section 5.3.) The JVA requires MVCA to deliver "assurances that it has the financial resources to satisfy its contractual

obligations" (JVA Section 4.8 as amended in Addendum), and where any document is deemed a public record "MVCA may meet its obligations under this clause by providing Newtown with copies of all documents that would constitute a public record under this agreement." (*Id.*, Section 2.4.) These provisions establish Newtown's ability to monitor MVCA's financial resources to satisfy its contractual obligations, through access to records for "assurance." Newtown admits that its "body politic" has an important interest in whether MVCA "has the financial wherewithal to meet its contractual obligations for the construction of the improvements." (Response, p. 10.) I conclude that the JVA "assurance" provisions were created to carry out Newtown's responsibilities to its citizens for public land use and proper execution of a village contract, that Newtown is entitled to monitor MVCA's financial resources as provided in the agreement, and that Newtown has access to the records received, inspected, or proffered for this purpose. Newtown contracted with MVCA for these public purposes, making MVCA a "person responsible for public records" in a relationship of "quasi-agency." R.C. 149.43(B)(1), (C)(1); *State ex ref. ACLU v. Cuyahoga Cty. Bd. of Comm'rs,* 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 52-54.

{¶28} Although Newtown testifies that it does not "have" any records responsive to the requests, (Response, Exhibit C, ¶ 6-9.) the offsite location of records does not mean they are not being maintained or "kept" by the public office. Newtown is required to maintain records necessary to document its functions, decisions and operations. MVCA agreed to maintain public records for Newtown. Where a request is made to a public office for office records maintained by a third party, the records should be retrieved and provided by the office, so that the requester does not have to deal with the private party in order to get them. *Krings* at 659. I conclude that any donor agreements, bank statements, or other financial records that were received, inspected, or proffered by MVCA as "assurances that it has the financial resources to satisfy its contractual obligations" were records relied on by Newtown to fulfill its responsibilities under the

joint venture. By law and as agreed in the JVA, MVCA is the "person responsible for" those records, and Newtown has a duty under public records law to retrieve and provide them upon request.

**Conclusion**

{¶29} Upon consideration of the pleadings and attachments, I find that Hicks has failed to establish by clear and convincing evidence that the Village of Newtown violated division (B) of R.C. 149.43 with respect to his request for "transparent information on all donors/contributors relating to the project," "transparent information on the special loan of $500k relating to the project (source, and specific below market terms)," and "transparent information from any entity specifically set up for this project," as these requests are improperly ambiguous and overly broad. I recommend that Newtown's motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6) be GRANTED as to these claims.

{¶30} I further find that the remaining requested items, to the extent they were actually used and relied on by Newtown to document its functions, decisions, and other activities, are "records" of Newtown. This includes records received by, inspected by, or proffered to Newtown's representative as the "assurances" of MVCA financial resources under JVA Section 4.8. I find that MVCA is a "person responsible for" any such records, and I recommend that the court ORDER Newtown to obtain and provide Hicks with copies of any such records. I recommend that Hicks be entitled to recover the amount of the filing fee under R.C. 2743.75(F)(3)(b).

{¶31} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's*

*adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

 

 

JEFFERY W. CLARK
Special Master

cc:

Christopher R. Hicks                    Emily T. Supinger
444 Woodwick Court                  150 East Fourth Street
Cincinnati, Ohio 45255              Cincinnati, Ohio 45202-4018

**Filed November 30, 2017**
**Sent to S.C. Reporter 12/11/17**