[This decision has been published in *Ohio Official Reports* at 93 Ohio St.3d 654.]

THE STATE EX REL. CINCINNATI ENQUIRER, DIVISION OF GANNETT SATELLITE INFORMATION NETWORK, INC., APPELLEE, *v.* KRINGS, CTY. ADMR., ET AL., APPELLANTS.

[Cite as *State ex rel. Cincinnati Enquirer v. Krings*, 2001-Ohio-1895.]

*Public records—Mandamus sought to compel Hamilton County Administrator et al. to grant relator access to the cost-overrun records relating to the construction of Paul Brown Stadium—Court of appeals' grant of writ and award of attorney fees affirmed.*

(No. 01-982—Submitted October 16, 2001—Decided December 19, 2001.)

APPEAL from the Court of Appeals for Hamilton County, No. C-000408.

_____

*Per Curiam.*

{¶ 1} In 1995, Hamilton County, Ohio, and the city of Cincinnati, Ohio, executed a memorandum of understanding in which the county agreed to implement a sales tax increase, subject to referendum, to fund construction of new stadiums and related facilities for the Cincinnati Bengals professional football team and the Cincinnati Reds professional baseball team. Following an election in which the Hamilton County voters approved the increased sales tax to fund the construction of the stadiums, the county began planning for construction.

{¶ 2} In January 1998, Hamilton County and Cincinnati entered into an agreement for the redevelopment of the riverfront area, including the construction of Paul Brown Stadium, the new football stadium for the Bengals. In the agreement, the county and the city specified that they had "determined that the construction of the new Stadium on the Cincinnati riverfront will create an extraordinary opportunity to eliminate blight and transform the riverfront into a

nucleus of economic development and to make the Riverfront an integral part of a redeveloped downtown Cincinnati."

{¶ 3} Pursuant to its authority under R.C. 307.023[1] to construct sports facilities, the Hamilton County Board of Commissioners entered into contracts with appellant Getz Ventures ("Getz") and a joint venture consisting of appellants Turner Construction Company, Barton Malow Company, and D.A.G. Construction Co., Inc. ("TBMD"), to construct Paul Brown Stadium. Getz and the individual firms that constitute TBMD are privately owned and operated businesses that are not political subdivisions or governmental entities of Ohio, are not organized for a public purpose, and do not receive the majority of their revenues from taxes collected by or under the authority of the board of county commissioners. But Getz's and TBMD's compensation under their contracts with the board did come from tax revenue.

{¶ 4} Under the board's contract with Getz, Getz agreed to be the project manager for the construction of the new football stadium. The contract provided that at the county's direction, Getz would be authorized to act on behalf of the county as its agent. Getz's contractual duties included identifying significant changes affecting the overall project budget, presenting them to the county during review meetings, advising the county on the development of construction estimates and on the breakdown of the project into appropriate costs, attending cost meetings on behalf of the county, and monitoring expenditures against an agreed cost plan and reporting these items to the county. Furthermore, on behalf of the county, Getz was required to advise the construction manager on the development of cost reports, their frequency, the extent of detail, and the distribution of the reports.

---

1. R.C. 307.023 provides, "A board of county commissioners may acquire, construct, improve, maintain, operate, lease, or otherwise contract for the acquisition or use of sports facilities, as defined in section 307.696 of the Revised Code."

**{¶ 5}** The board contracted with TBMD to have TBMD act as the construction manager for the Paul Brown Stadium project. In this contract, TBMD agreed to "furnish its best skill and judgment in furthering the interests of the Owner." The contract referred to a "construction team," consisting of the Hamilton County Board of Commissioners, Getz, TBMD, and the project architect, which would work from the designing of the project through completion of the construction of the stadium. The construction team is also commonly referred to as the project team. TBMD was contractually required to identify variances between actual and budgeted or estimated costs and advise the board and the architect of steps necessary to meet the guaranteed maximum construction price. The contract further provided that TBMD must maintain cost-accounting records on all work performed, afford the board access to these records, and keep a daily log of construction activity including specified information "and similar relevant data as the Owner may require."

**{¶ 6}** By letter dated March 6, 2000, Dan Klepal, a reporter for appellee, the Cincinnati Enquirer, a newspaper that is a division of Gannett Satellite Information Network, Inc. ("Enquirer"), requested that appellant Hamilton County Administrator David Krings permit Klepal to promptly inspect under R.C. 149.43, the Ohio Public Records Act, ten categories of records, including the following:

"All correspondence—including e-mails, memos and reports—between project team members related to cost overruns or potential cost overruns at Paul Brown Stadium. This should include memos and reports between different team members, for example Getz Ventures staff communicating with NBBJ [the project architect] or TBMD, as well as memos and reports among staff on the same company, whether it be Getz, NBBJ or TBMD."

**{¶ 7}** The county provided the Enquirer with the following records in response to Klepal's request: all records in existence and physically located in the county administration building and all records in existence and authored by,

addressed to, or copied to county employees and officials at the time of the request and located in the construction trailer for Paul Brown Stadium.

{¶ 8} After Suzanne Burck, the Director of Administrative Services for Hamilton County, instructed the Enquirer that all communications with the construction team or any member of the team were to be directed through Brooke Hill, the Enquirer requested that Hill, as a representative of TBMD, provide the newspaper with access to inspect all communications, including e-mails, memoranda, reports, and draft reports, between team members relating to cost overruns and the construction schedule at Paul Brown Stadium. Hill is an employee of HMS Success, which had a contract with Getz and was being paid by the county for its services as public information specialist for the project. Hill responded in a letter in which she stated that the project team rejected the Enquirer's request, specifying, "We do not believe that internal business documents of a contractor are public documents covered under the Ohio Open Records Act."

{¶ 9} In June 2000, the Enquirer filed a complaint in the Court of Appeals for Hamilton County for a writ of mandamus to compel appellants, Krings, TBMD, and Getz, to provide it with access to the requested records. The Enquirer also requested an award of attorney fees. In December 2000, after appellants filed answers and motions for summary judgment, the court of appeals granted the writ and ordered appellants to provide the Enquirer with access to the requested cost-overrun records and deferred its consideration of the Enquirer's request for attorney fees. We granted the Enquirer's motion to dismiss appellants' initial appeal from the December 2000 entry. *State ex rel. Cincinnati Enquirer v. Krings* (2001), 91 Ohio St.3d 1458, 743 N.E.2d 399. In May 2001, the court of appeals entered a judgment awarding the Enquirer attorney fees in the amount of $9,991.50 against Krings.

{¶ 10} This cause is now before the court upon the appeals as of right of Krings, TBMD, and Getz.

Mandamus

{¶ 11} Appellants assert that the court of appeals erred in granting the writ of mandamus to compel access to the cost-overrun records relating to the construction of Paul Brown Stadium.

{¶ 12} Mandamus is the appropriate remedy to compel compliance with Ohio's Public Records Act, R.C. 149.43. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency* (2000), 88 Ohio St.3d 166, 171, 724 N.E.2d 411, 417. A "public record" is "any record that is kept by any public office, including, but not limited to * * * county * * * units." R.C. 149.43(A)(1). It is uncontroverted that Krings, the county administrator to whom the initial records request was directed, is a public official appointed by a public office, the board of county commissioners. See R.C. 149.011(A) and (D).

{¶ 13} As the court of appeals correctly held, the dispositive issue is whether the requested cost-overrun records in the custody of private entities like TBMD and Getz are public records for purposes of the Public Records Act. "Records" that are referred to in R.C. 149.43 include "any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G).

{¶ 14} R.C. 149.43(C) permits a mandamus action against either "the public office or the person responsible for the public record" to compel compliance with the Public Records Act. This language "manifests an intent to afford access to public records, even when a private entity is responsible for the records." *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 39, 550 N.E.2d 464, 467; *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 263, 602 N.E.2d 1159, 1163.

{¶ 15} In order for a private entity to be subject to R.C. 149.43, (1) it must prepare the records in order to carry out a public office's responsibilities, (2) the public office must be able to monitor the private entity's performance, and (3) the public office must have access to the records for this purpose. *State ex rel. Rea v. Ohio Dept. of Edn.* (1998), 81 Ohio St.3d 527, 531, 692 N.E.2d 596, 600, citing *Mazzaro*.

{¶ 16} The construction of stadiums has historically been accomplished by public, rather than private enterprise. See *Bazell v. Cincinnati* (1968), 13 Ohio St.2d 63, 69, 42 O.O.2d 137, 140, 233 N.E.2d 864, 869, quoting *Cleveland v. Bd. of Tax Appeals* (1950), 153 Ohio St. 97, 131-132, 41 O.O. 176, 192, 91 N.E.2d 480, 497 (Taft, J., dissenting) ("The construction and operation of modern open-air stadiums have not been developments of private enterprise. They originated in the athletic needs of schools and colleges and have been undertaken generally as municipal functions throughout the country. * * * [The] problems * * * that might arise * * *, if the enterprise were not conducted as a public enterprise, are important factors which justify the conduct of such enterprise at all times under governmental supervision"); *Meyer v. Cleveland* (1930), 35 Ohio App. 20, 25, 171 N.E. 606, 607, referring to stadiums constructed in ancient Greece and Rome; see, also, *CLEAN v. State* (1996), 130 Wash.2d 782, 793, 928 P.2d 1054, 1059 ("the overwhelming majority of courts from other jurisdictions confronting this issue have determined that construction of a publicly owned stadium to be leased to professional sports teams serves a public purpose").

{¶ 17} Under R.C. 307.023, the Hamilton County Board of Commissioners was authorized to construct Paul Brown Stadium. The board did so because Hamilton County and Cincinnati believed that construction of the stadium was in

the best interest of the county and city.[2]  Pursuant to this statutory authority, the board contracted with TBMD and Getz to construct the stadium.

{¶ 18} In these contracts, TBMD and Getz were obligated to prepare records related to construction costs for the publicly funded stadium, the board and the county had the right to monitor their performance under the contracts, and the board was authorized to access records in order to monitor their performance.  In fact, in certain circumstances, Getz had a contractual duty to act as the county's *agent* regarding construction costs, including attending cost meetings on behalf of the county and advising the construction manager, *i.e.*, TBMD, on cost reports.  And Getz had a further duty to monitor costs against the plan and report to the county.  TBMD specifically agreed to act to further the board's interests, to provide access to cost-accounting records, and to record pertinent project information as the board required.  These provisions are sufficiently broad to establish a right of access on the part of the county to TBMD and Getz's records concerning cost overruns on the public construction project.  As the Enquirer notes, it is significant that there is no evidence that either Krings or any representative of the county had been refused access to these records after requesting them from TBMD or Getz.

{¶ 19} Moreover, as in *State ex rel. Gannett Satellite Info. Network v. Shirey* (1997), 78 Ohio St.3d 400, 403, 678 N.E.2d 557, 560-561, a public office contracted with private entities for a public purpose:  to construct a publicly funded stadium, an undertaking of enormous, unquestioned public importance.  As we held therein, governmental entities cannot conceal information concerning public duties by delegating these duties to a private entity.  *Id.* at 403, 678 N.E.2d at 561; *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 137, 684 N.E.2d 1222, 1225.  By undertaking to exercise its statutorily

---

2. Public funding of the construction of sports facilities is not necessarily always in the public's best interest.  See, *e.g.*, Shropshire, Sports Facilities, Franchises, Events and the American Urban Renaissance (1999), 30 U.Tol.L.Rev. 385.

and historically supported authority to construct Paul Brown Stadium for specified public purposes, the board of county commissioners invoked the concomitant duty to provide public access, via proper records requests, to records relating to that construction.

{¶ 20} Nor were requests for records defective, as appellants contend, for not being properly directed to TBMD and Getz. The Enquirer initially requested that Krings, an appropriate county official, provide access to the requested records and directed its second request to Brooke Hill only upon being instructed by the county's director of administrative services that communications being directed to members of the construction team, including TBMD and Getz, be directed to Hill. Hill refused the second request by stating that the project team would not be honoring the Enquirer's requests. Under these circumstances, the Enquirer could have justifiably anticipated that additional requests to TBMD and Getz would be unavailing. Cf. *State ex rel. White v. Cleveland* (1973), 34 Ohio St.2d 37, 63 O.O.2d 79, 295 N.E.2d 665, paragraph two of the syllabus (request for records not required if circumstances establish that action would be futile or unavailing).[3]

{¶ 21} More important, the requested records should have been made available for the Enquirer's inspection after the initial request to Krings so that appellee did "not have to deal with a private third party in order to gain access to the records." *State ex rel. Recodat Co. v. Buchanan* (1989), 46 Ohio St.3d 163, 164, 546 N.E.2d 203, 204.

{¶ 22} Furthermore, as the Enquirer notes, if we were to adopt appellants' view, a private entity performing a government contract that obligates it to act to further the best interest of the governmental entity could prepare records concerning massive cost overruns and fail to divulge these records to the public office unless

---

3. Although TBMD and Getz contend that Hill was never authorized to act on their behalf, they claim that the requested records are not public records because they are "internal business" records, exactly the rationale used by Hill in rejecting the Enquirer's second records request.

the office specifically requested the records. Given the scope of this undertaking, the public had a legitimate need to know whether the publicly funded project was proceeding as planned and the reasons for cost overruns, if any, in the project.

{¶ 23} "[T]he inherent, fundamental policy of R.C. 149.43 is to promote open government, not restrict it." *State ex rel. Besser v. Ohio State Univ.* (2000), 89 Ohio St.3d 396, 398, 732 N.E.2d 373, 376. This purpose is furthered here by construing R.C. 149.43 to encompass the requested records, and this construction is consistent with our duty to liberally construe the statute in favor of broad access and to resolve any doubt in favor of disclosure of the records. *State ex rel. Wallace v. State Med. Bd. of Ohio* (2000), 89 Ohio St.3d 431, 433, 732 N.E.2d 960, 964.

{¶ 24} Based on the foregoing, the court of appeals properly held that the requested cost-overrun records are within the jurisdiction of the Hamilton County Board of Commissioners, which appointed Krings, and that the records were public records for purposes of R.C. 149.43 and 149.011(G), regardless of whether those records are in the possession of the county, TBMD, or Getz. Therefore, we affirm the judgment of the court of appeals. By so holding, we need not address the Enquirer's contention that the construction team constituted a public office for purposes of R.C. 149.43. See, generally, *State ex rel. Stys v. Parma Community Gen. Hosp.* (2001), 93 Ohio St.3d 438, 755 N.E.2d 874.

## Attorney Fees

{¶ 25} We also affirm the award of attorney fees against Krings. The Enquirer's requests were proper, the Enquirer established an unquestioned benefit through the public's right to know about cost overruns in the construction of Paul Brown Stadium, which was largely financed with public tax revenue, and Krings failed to comply for reasons that were devoid of merit. See *State ex rel. Dillery v. Icsman* (2001), 92 Ohio St.3d 312, 317, 750 N.E.2d 156, 162.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., not participating.

―――――――――――

*Michael K. Allen*, Hamilton County Prosecuting Attorney, *Carl J. Stich* and *Christian J. Schaefer*, Assistant Prosecuting Attorneys, for appellant David Krings.

*Taft, Stettinius & Hollister* and *William J. Seitz*, for appellants Turner Construction Co., D.A.G. Construction Co., Inc., and Barton Malow Co.

*Katz, Teller, Brant & Hild, L.P.A.,* and *James F. McCarthy III*, for appellant Getz Ventures, L.L.C.

*Graydon, Head & Ritchey LLP*, *John C. Greiner, John A. Flanagan* and *Ann K. Schooley*, for appellee.

―――――――――――