[Cite as *Ferrise v. Berea City School Dist.*, 2024-Ohio-5310.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| ADAM FERRISE | Case No. 2024-00504PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| BEREA CITY SCHOOL DISTRICT | |
| Respondent | |

{¶1} This matter is before me for a R.C.2743.75(F) report and recommendation. I recommend that the court: (1) order respondent to produce the settlement agreements requested, subject to redactions to protect third parties' statutory privacy rights, (2) award requester his filing fees and other costs, and (3) require respondent to bear the balance of the costs of this case.

## I.  Background.

{¶2} Respondent Berea City School District ("the District") was sued in federal court over particularly troubling claims ("the Litigation").  Its counsel actively defended the suits. The District's Board of Education eventually authorized its superintendent and treasurer to take any actions necessary to resolve the Litigation. Three functionally identical settlement agreements were reached. Those agreements provided that the plaintiffs' claims would be paid by the District's insurer. *PQ Miscellaneous*, filed September 9, 2024 ("*Requester's Evidence*"), pp., 14-62, 148-149, 154-155; *Sealed Documents Received*, September 25, 2024.[1]

{¶3} Requester Adam Ferrise, a reporter for the *Cleveland Plain Dealer*, made multiple public records requests for copies of the settlement agreements. The District

---

[1] All references to specific pages of Requester's Evidence are to the pages of the PDF copy posted in the court's docket.

responded by stating that it had no responsive records. *Requester's Evidence*, pp. 10 ¶¶ 8-14, 11 ¶¶ 16, 20, 121, 122, 123, 125, 126.

{¶4} Mr. Ferrise brought this case to enforce his requests. Mediation was unsuccessful and a schedule was set for the parties to file evidence and memoranda supporting their positions. The District was also ordered to file a copies of the settlement agreements for in camera review. That schedule has run its course, and the settlement agreements have been filed, making this case ripe for decision. *Order Terminating Mediation*, entered August 23, 2024; *Order*, entered September 19, 2024*; Sealed Documents Received*.

## II.  Analysis.

### A.  The settlement agreements are public records and should be produced.

{¶5} A party suing for public records must "prove facts showing that the requester sought an identifiable public record . . . and that the public office or records custodian did not make the record available." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office,* 2020-Ohio-5371, ¶ 33. Mr. Ferrise sought what he claims are public records and the District did not make those putative public records available. The District does not invoke any exception to the Public Records Act, but instead argues that the agreements do not meet the threshold definition of public records. This case therefore turns on whether the settlement agreements fit within the definition of "public records."

{¶6} R.C. 149.43(A)(1) defines public records as "*records kept* by any public office, including … school district units[.]" (Emphasis added). The settlement agreements are "records," they are "kept" by the District for purposes of the Public Records Act, and all agree that the District is a public office. The settlement agreements are therefore public records and should be produced.

### 1.    The settlement agreements are "records."

{¶7} R.C. 149.011(G) defines a "record," as relevant here, as "any document . . . coming under the jurisdiction of any public office . . . which serves to document the  . . . decisions . . . or other activities of the office." That definition is a direction for "expansion rather than constriction[.]" *Kish v. City of Akron*, 2006-Ohio-1244, ¶ 20.  Consistent with that, the courts apply the definition according to its "great breadth" and "expansive scope." *Id*.; *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 2012-Ohio-753, ¶ 30.   The settlement agreements have all the elements of "record[s]."

{¶8} *The settlement agreements are "document[s]."* A review of the copies filed for in camera review reveals that they are writings.

{¶9} *The settlement agreements came under the District's "jurisdiction."* On a general level, "[j]urisdiction is power to act[.]" *Roy v. Plageman*, 2002-Ohio-6286, ¶ 28 (3d Dist.); *Relief Assn. of Union Works, etc. v. Equitable Life Assur. Soc*., 63 Ohio App. 91, 100, (7th Dist.1939). Consistent with that, a matter is within a public office's jurisdiction for purposes of R.C. 149.011(G) if the office has statutory authority to address the matter. *Hurt v. Liberty Twp*., 2017-Ohio-825, ¶ 16, adopted March 29, 2017 (Ct. of Cl.), aff'd 2017-Ohio-7820 (5th Dist.).

{¶10} R.C. 3313.17 gave the District power to act regarding the Litigation. It provides that the District's Board is "capable of  . . .  being sued[.]" That language gave the District power, and indeed the obligation, to "take whatever action is necessary and appropriate to protect the public interest" in connection with the Litigation. *State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 2021-Ohio-1176, ¶ 20. See also *Id*. at ¶ 24.

{¶11} The District exercised that statutory power. Its counsel appeared and actively defended its interests and the District presumably discharged its responsibility to monitor its counsel's actions in that lawsuit. *Id*. at ¶ 24; *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 2022-Ohio-4237, ¶ 21 ("in the absence of evidence to the contrary, courts will presume that public officers have properly performed their duties"); *Requester's Evidence*, pp. 20, 21, 22 at docket entries 6, 8, 21, 27. Further, the District's Board's directed its superintendent and treasurer to "take any actions as may be necessary to resolve the lawsuit[.]" *Id.* p. 148. The settlement and the agreements that journalized it

were therefore within the District's statutory authority to respond to the Litigation, and consequently within its jurisdiction for purposes of R.C. 149.43(G).

{¶12} *The settlement agreements documented the district's decisions and actions*. That is true in two respects.

{¶13} First, they documented the District's response to the Litigation. The District's Board decided to seek settlement and directed its superintendent and treasurer to take action to achieve that result. The settlement agreements document the results of that decision and those officials' actions. As the Supreme Court has held, "[s]ettlement agreements document decisions and activities of the public office" that is a defendant in the settled litigation. *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 136 (1997).

{¶14} Second, they documented the Districts' financial status. Materials are records if they shed light on the public office's financial affairs. *State ex rel. Harper v. Muskingum Watershed Conservancy Dist*., 2014-Ohio-1222, ¶ 9 (5th Dist.); *Doe v. Ohio State Univ*., 2023-Ohio-4880, ¶ 9, adopted 2024-Ohio-565 (Ct. of Cl.). The Litigation exposed the District to significant potential liabilities, and the settlement agreements resolved those liabilities. Those potential liabilities implicated the District's finances, and the settlement agreements shed light on those matters. They also shed light on the District's future financial status because such settlements can impact insurance premiums going forward. *Armatas*, 2021-Ohio-1176, ¶ 24.

{¶15} The settlement agreements are therefore records

{¶16} That is not changed by the District's assertion that it did not create the settlement agreements. Statutorily, R.C 149.011(G) does not always require that the office "create" the document for it to be a record. In the alternative, the document can also be a record if it is "under the jurisdiction" of the office, as was the case here. Precedentially, the Supreme Court has treated documents created by entities other than the public office as records. *Armatas*, 2021-Ohio-1176, ¶¶ 1, 6, 23, 24 (invoices created by private lawyers); *State ex rel. Cincinnati Enquirer v. Krings*, 93 Ohio St.3d 654 (2001) (documents created by the public office's contractors and private construction manager). And of particular import here, the Supreme Court has specifically held that a settlement

agreement was a record, despite the "preparation of the settlement agreement by the attorney for the county's insurer[.]" *Findlay Publishing*, 80 Ohio St.3d at 137.

{¶17} Nor is it changed by the fact that the District was not a party to the settlement agreement. Nothing in the text of R.C. 149.011(G) limits the class or records to materials to which the public office is a party. Consistent with that, the courts have required production of records documenting transactions the public office was not a party to if those transactions were related to a delegated governmental function. *Armatas*, 2021-Ohio-1176, ¶¶ 1, 6, 24 (invoices to private insurer from law firm hired by the insurer); *State ex rel. Toledo Blade Co. v. Ohio Bur. of Workers' Comp*., 2005-Ohio-3549, ¶¶ 6, 10, 17, 20, 21 (records of transactions between coin brokers and buyers/sellers of coins). Further, "any material on which a public office . . . did rely" is considered to be a record. *State ex rel. Mazzaro v. Ferguson,* 49 Ohio St.3d 37, 40 (1990); *Kish*, 2006-Ohio-1244, ¶ 20. The District plainly relied upon the settlement agreements, regardless of whether it was a party to them; the agreements disposed of significant claims against it. The settlement agreements are therefore records, regardless of whether the District was a party to the agreements.

{¶18} Finally, to the extent that there is any doubt about whether the settlement agreements are records, precedent requires that doubt to be resolved in favor of record status. *State ex rel. Cincinnati Post v. Schweikert*, 38 Ohio St.3d 170, 173 (1988); *State ex rel. Dist. 1199, Health Care & Social Serv. Union, SEIU v. Gulyassy*, 107 Ohio App.3d 729, 733 (10th Dist.1995); *Chernin v. Geauga Park Dist*., 2018-Ohio-1579, ¶ 18, adopted 2018-Ohio-1717 (Ct. of Cl.).  That tie breaking rule is necessary because public records are a "portal through which people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance." *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs*., 2008-Ohio-6253, ¶ 20. A holding that the settlement agreements are not records would thwart that important function, limiting District residents' ability to hold the District and its officials accountable for a matter of significant import.

2. **The settlement agreements were "kept by" the District for purposes of the Public Records Act**

{¶19} Although R.C. 149.43(A)(1) requires that a record be "kept by" a public office for it to be a "public record," it does not require that the public office maintain actual possession of the record. Instead, a record is a public record, even in the possession of a private party, if that party came to have the record as result of the public office delegating one of its public functions to the private party. *Krings*, 93 Ohio St.3d at 656; *State ex rel. Gannett Satellite Information Network v. Shirey*, 78 Ohio St.3d 400, 403 (1997); *Toledo Blade*, 2005-Ohio-3549, ¶¶ 10, 20, 21; *Hurt v. Liberty Twp.*, 2017-Ohio-7820, ¶¶ 80-90 (5th Dist.); *Wengerd v. E. Wayne Fire Dist.*, 2017-Ohio-8951, ¶¶ 21, 22, adopted December 11, 2017 (Ct. of Cl.); See also *State ex rel. Rea v. Ohio Dept. of Edn.*, 81 Ohio St.3d 527, 530-531 (1998).

{¶20} Indeed, *Armatas* and *Findlay Publishing* applied those principles in cases that are indistinguishable from this case. In both, as here, public offices were sued and their insurers arranged for counsel to defend the offices. In both, as here, those counsel created documents related to the litigation they were defending, but the offices did not possess those documents. In both, as here, requesters made public records requests for those records. In both, as here, the offices denied the requests, asserting that the records were not public records because they did not possess them.

{¶21} *Armadas* none the less required that the records be produced because they were created pursuant to a delegation of one of the office's public duties:

> The prosecution and defense of such lawsuits involves a public duty . . . . In connection with such lawsuits, the [public office] must take whatever action is necessary and appropriate to protect the public interest—including hiring and supervising attorneys. Although the [office] here has delegated that duty . . . the [office] still occupies one side of the bilateral formal relationship between an attorney and client—a relationship that persists even when an insurer hires an attorney and exercises substantial control over the course of litigation. 2021-Ohio-1176, ¶ 20, 21

The Court therefore concluded that the public office's duty to "obtain appropriate legal representation is analogous to other public duties that were delegated by public offices in cases in which" it required the production of records. *Id*. at ¶ 21.

*Findlay Publishing* similarly rejected that argument:

"The board's argument is meritless. Government entities cannot conceal public records by delegating a public duty to a private entity. The preparation of the settlement agreement by the attorney for the county's insurer, who is representing the county and its employees in the lawsuit, constitutes a public duty performed by the county's agent." 80 Ohio St.3d at 137.

{¶22} There is no meaningful distinction between *Armadas*, *Findlay Publishing,* and this case. Those precedents should therefore control this case.

\*\*\*

{¶23} In sum, the settlement agreements fit within the general definition of public records. The District has not asserted any specific exemption from that definition. I therefore recommend that the District be ordered to produce the settlement agreements.

{¶24} That said, the agreements contain the names of private individuals, including minors, whose identities were shielded in the Litigation. The District should be allowed to redact the settlement agreements to protect those persons' statutory privacy rights. *Matis v. Toledo Police Dept.*, 2023-Ohio-4878, ¶ 10, adopted 2024-Ohio-567 (Ct. of Cl.).

### C. Requester is entitled to recover his filing fee and costs; respondent should bear the balance of the costs.

{¶25} R.C. 2743.75(F)(3)(b) provides that the "aggrieved person shall be entitled to recover from the public office \*\*\* the amount of the filing fee \*\*\* and any other costs associated with the action[.]" Mr. Ferrise was aggrieved by the District withholding the settlement agreements. I therefore recommend that he recover his filing fee and the costs he incurred in this case. I also recommend that the District bear the balance of the costs of this case.

## III.    Conclusion.

{¶26} Based on the foregoing, I recommend that the court:

A. Order respondent to produce the settlement agreements, subject to redactions to protect third parties' statutory privacy rights.
B. Award requester his filing fees and other costs.
C. Require respondent to bear the balance of the costs of this case.

{¶27} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

TODD MARTI
Special Master

**Filed October 1, 2024**
**Sent to S.C. Reporter 11/6/24**