[Cite as *Forhan v. Ohio House of Representatives*, 2025-Ohio-4336.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| ELLIOT P. FORHAN | Case No. 2025-00596PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| OHIO HOUSE OF REPRESENTATIVES | |
| Respondent | |

{¶1} This case is before me for a R.C. 2743.75(F) report and recommendation. I recommend that the court: (1) order respondent to produce drafts of the reports on the Forhan and Cherry Investigations within 30 days of the entry of an order adopting this report and recommendation; (2) order respondent to file an affirmation that it has taken that action within 40 days of the entry of a judgment adopting this report and recommendation; (3) order respondent to reimburse requester for his filing fee and costs; (4) order respondent to pay the balance of the costs of this case; and (5) deny all other relief.

## I. Background.

{¶2} Requester Elliot Forhan was formerly a member of the respondent Ohio House of Representatives (the "House"). During his time in office the House investigated allegations that he engaged in inappropriate behavior (the "Forhan Investigation"). That investigation was conducted by Perez and Morris, LLC, (the "Firm"), a private law firm retained by the Ohio Attorney General on the House's behalf. The Firm issued a report on the investigation to the House. *Requester Elliot Forhan's Filing of Evidence*, filed July 15, 2025 ("*Requester's Evidence*"), pp. 13-30; *Notice of Submission of Evidence*, filed July 16, 2025 ("*Respondent's Evidence*"), p. 8, ¶ 6.[1]

---

[1] All references to specific pages of the *Requester's Evidence* are to the pages of the PDF file posted on the court's docket. The *Respondent's Evidence* was filed as several

{¶3} The Firm also conducted a separate investigation on behalf of the House into allegations made by a House staffer (the "Cherry Investigation"). The Firm was also retained by the Attorney General on behalf of the House to perform that work. It issued two reports, one released to the public and one released only to the House. *Requester's Evidence*, pp. 30-45; *Respondent's Evidence*, p. 8, ¶ 5.

{¶4} Mr. Forhan made several requests to the House and one to the Firm for public records related to the Forhan and Cherry Investigations. The House produced multiple records in response to those requests, but withheld two groups of materials. One group contained notes generated by the individual Firm lawyers who participated in the investigations (the "Notes"). The other was comprised of preliminary drafts of the reports of the investigations (the "Drafts") (collectively the "Withheld Materials").

{¶5} Mr. Forhan brought this case to compel production of the Withheld Materials. Mediation was bypassed and a schedule was set for the House to file Withheld Materials for in camera review and for both parties to file evidence and memoranda supporting their positions. That schedule has run its course, making this case ripe for decision. *Complaint*, filed June 20, 2025; *Order Bypassing Mediation*, entered June 30, 2025; *Order*, entered August 6, 2025.

## II. Analysis.

{¶6} The House advances multiple arguments as to why Mr. Forhan is not entitled to the Withheld Materials:

- Those materials are not records of the House within the meaning of R.C. 149.011(G) because (a) it did not create them or possess them until it retrieved them in order to respond to Mr. Forhan's requests, and (b) they do not document the House's activities.

- The Notes are not public records within the meaning of R.C. 149.43(A)(1).

- The Drafts are not public records within the meaning of R.C. 149.43(A)(1).

---

separate PDF files, Bates numbered consecutively across the files. All references to specific pages of *Respondent's Evidence* are to the Bates Numbers on the pages referred to.

- The Withheld Materials are excepted from the Public Records Act as R.C. 149.43(A)(4) trial preparation records.

- The Withheld Materials are excepted from the Public Records Act by R.C. 149.43(A)(1)(v) because they are covered by the attorney-client privilege.

Each argument will be addressed separately.

### A. The Withheld Materials can be records of the House even though they came from the Firm.

#### 1. The fact that the House did not create or possess the Withheld Materials does not bar requester's claims because they were under the House's jurisdiction.

{¶7} The House argues that it is only obligated to produce materials that are records within the meaning of R.C. 149.011(G) and that none of the Withheld Materials are records because it did not possess the materials prior to retrieving them from the Firm in response to Mr. Forhan's requests. More specifically, it argues that Mr. Forhan had the burden to prove that the materials were records and that the materials cannot be records because the House did not "create[] or receive[]" them as required by R.C. 149.011G).

{¶8} The House is correct in asserting that it is not obligated to produce non-records and that Mr. Forhan has the burden of proving that the Withheld Materials were records, but its argument overlooks the fact R.C 149.011(G) does not always require that the office create or receive a document for it to be a record. "Even if the public office does not 'create' or 'receive' the records, the records may nonetheless be 'under the jurisdiction' of the public office[.]" *State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 2021-Ohio-1176, ¶ 14. The withheld materials can therefore be records, regardless of whether the House created or received them, if they were under the House's jurisdiction. They were.

{¶9} Legally, "[j]urisdiction is power to act[.]" *Roy v. Plageman*, 2002-Ohio-6286, ¶ 28 (3d Dist.); *Relief Assn. of Union Works, etc. v. Equitable Life Assur. Soc.*, 63 Ohio App. 91, 100, (7th Dist.1939). Consistent with that, a matter is within a public office's jurisdiction for purposes of R.C. 149.011(G) if the office has legal authority to address the matter generating the materials at issue. *Hurt v. Liberty Twp.*, 2017-Ohio-825, ¶ 16, adopted March 29, 2017 (Ct. of Cl. Case No. 2026-00856PQ), aff'd 2017-Ohio-7820 (5th Dist.);

*Ferrise v. Berea City School Dist*., 2024-Ohio-5310, ¶ 9, adopted, 2024-Ohio-5968 (Ct. of Cl.).

{¶10} Factually, the record contains undisputed evidence establishing that the Forhan and Cherry Investigations were under the House's jurisdiction. The Forhan Investigation was undertaken pursuant to the House's authority to maintain order and to discipline its members under Ohio's Constitution and the Rules of the House. *Requester's Evidence*, pp. 15, 27-28. The Cherry Investigation focused on the administration of the House's internal operating procedures and hence was conducted under the House's constitutional power over matters implicating the "undisturbed transaction of its business[.]" Ohio Const., art. II, § 6; *Requester's Evidence*, pp. 30-45.  That undisputed evidence establishes the House's jurisdiction over the Withheld Materials, and that is sufficient to satisfy R.C. 149.011(G), regardless of whether the House created or received those records.

### 2.  The Withheld Materials documented a House function.

{¶11} The House argues that the Withheld Materials document the Firm's actions, rather than its own, and hence do not satisfy R.C. 149.011(G)'s requirement that materials "document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."  This argument is also legally and factually flawed.

{¶12} Legally, '[g]overnment entities cannot conceal public records by delegating a public duty to a private entity.' *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 137 (1997); *State ex rel. Gannett Satellite Information Network v. Shirey*, 78 Ohio St.3d 400, 403 (1997); *State ex rel. Cincinnati Enquirer v. Krings*, 93 Ohio St.3d 654, 659 (2001). Materials related to a delegated public function are public records once the delegation has been proven, even if the records are possessed by the private delegee. *Armatas*, 2021-Ohio-1176, ¶ 16. Also legally, a public office's human resources matters are one of its public functions. *Martin v. Accel Schools Ohio*, 2024-Ohio-6143, ¶ 31; (Ct. of Cl.); Ohio Attorney General, *Ohio Sunshine Laws 2024, An Open Government Resource Manual*, p. 75.

{¶13} Factually, undisputed evidence establishes that the House delegated a portion of its human resources functions to the Firm. One of the Firm's principals attested that the Firm was retained to "investigate . . .  a complaint of discrimination made by Sarah

Cherry," a quintessential human resources matter. *Notice of Filing Executed Affidavit of Sarah Crabtree Perez,* filed July 23, 2025 ("*Perez Aff*"), p. 3, ¶ 4.[2] A review of the report on the Forhan Investigation reveals that it, at its core, also involved a typical human resources matter: how to respond to the impact one worker's dysfunction was having on his coworkers. The evidence also establishes that the House delegated those matters to the firm, by asking the Attorney General's office to find it counsel to handle those matters. *Requester's Evidence*, pp. 13, 108; *Perez Aff.*, p. 4, ¶ 8. Those materials therefore documented a delegated public function and hence were records of the House.

**B. Requester has not carried his burden of proving that the Notes are public records.**

{¶14} The House argues that Mr. Forhan has the burden of proving that the Notes are public records and that he has not carried that burden. More specifically, it proffers affidavit testimony that the notes were created for the personal use of the individual Firm attorneys who took them and that they were not used by anyone other than those attorneys.

{¶15} Mr. Forhan counters that the House is actually asserting an exception to public record status, and that it consequently has the burden of proving that the notes fit within the exception. He points to evidence that he argues precludes a finding that the Notes fit within that exception.

{¶16} In short, we have conflicting views of who bears the burden of proof and the sufficiency of the parties' evidence.

{¶17} *Burdens of proof.* The Supreme Court's decision in *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, establishes the parties' respective burdens. It held that a R.C. 2643.75 "complainant's burden of production is to . . . prove facts showing that the requester sought an identifiable *public record* pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Id*. ¶ 33 (punctuation omitted, emphasis added). The requirement that the requester prove he requested and was denied a "public record" requires the requester to

---

[2] All references to specific pages of the *Perez Aff.* are to the pages of the PDF file posted on the court's docket, rather than to the internal pagination of the filing.

prove the constituent elements of a public record set by R.C. 149.43(A)(1): that the material sought was a "record," and that it was "kept" by a "public office." The requester must prove those elements to make a prima facie case. *Welsh-Huggins* assumed, and other precedent establishes, that those elements must be proven with clear and convincing evidence. *Viola v. Cuyahoga Cty. Prosecutor's Office*, 2021-Ohio-4210, ¶ 16 (8th Dist*.); Hurt v. Liberty Twp*., 2017-Ohio-7820, ¶¶ 27-30 (5th Dist.).

{¶18} *Welsh-Huggins* went on to state the burden born by a public office that invokes an exception to the Public Records Act. "If the public office or person responsible for public records refuses to release the requested record on the basis of a statutory exemption, its burden of production in the R.C. 2743.75 proceeding is to . . . prove facts establishing that the requested record falls squarely within the exemption." *Id*. ¶ 37 (punctuation omitted). That language does not relieve a requester from its burden of proving the elements of its claim, but requires the respondent to prove other facts to avoid producing disputed material. That burden must be carried by at least a preponderance of the evidence. *White v. Dept. of Rehab. & Correction*, 2019-Ohio-472, ¶ 15, (Ct. of Cl.), *aff'd*, 2020-Ohio-386, ¶¶ 12, 28 (10th Dist.). But see, *Welsh-Huggins*, 2020-Ohio-5371, ¶ 63 ("under our precedent, it is not enough to say that a record is *probably* within a statutorily prescribed exemption") (emphasis sic.).

{¶19} The cases considering whether notes are public records focus on whether the constituent elements of a public record set by R.C. 149.43(A)(1) were present. *State ex rel. Cranford v. Cleveland*, 2004-Ohio-4884, ¶ 18 and *State ex rel. Verhovec v. City of Marietta*, 2013-Ohio-5415, ¶ 30 (4th Dist.), focused on the notetakers' use of the notes, and hence implicitly considered whether the notes sufficiently documented the operations of the office to be "records" within the meaning of R.C. 149.011(G) and R.C. 149.43(A)(1). *State ex rel. Steffen v. Kraft*, 67 Ohio St.3d 439, 440 (1993) and *State ex rel. Summers v. Fox*, 2020-Ohio-5585, ¶¶ 64, 66; focused on whether the notes satisfied the "kept by the public office" element of R.C. 149.43(A)(1). None of the note cases invoke any statutory exception to the Public Records Act. In sum, they focus on whether the notes had the elements needed to make them public records. Therefore, under the rule set by *Welsh-Huggins,* a requester seeking notes has the burden of proving that they are public records; the respondent does not have the burden of disproving that.

{¶20} *Sufficiency of proof*. As noted above, a requester must prove the elements of his claim with clear and convincing evidence. That requires more than a preponderance of the evidence. *State ex rel. Mobley v. City of Toledo*, 2022-Ohio-3889, ¶ 11.

{¶21} The courts consider several factors in determining whether notes have all the elements of a public record, the most prominent of which is whether they were created for the notetaker's personal benefit. *Steffen*, 67 Ohio St.3d at 440; *Cranford*, 2004-Ohio-4884, ¶¶ 9, 18; *Verhovec*, 2013-Ohio-5415, ¶ 30. The House has presented unequivocal affidavit testimony that the notes were created and used only by the individual note takers. *Perez Aff*, pp. 4, 5, 6, ¶¶ 7, 8, 12, 13, 14, 18.

{¶22} Although Mr. Forhan points to language in the Firm's retention agreement obligating the Firm to produce the Notes if the Attorney General or the House requested them, there is no evidence that any such request was made before the records requests at issue here. The preponderance of the evidence therefore indicates that the Notes were for the notetakers' personal benefit. If the preponderance goes against Mr. Forhan, he has necessarily failed to carry his higher burden of producing clear and convincing evidence that the Notes were records.

{¶23} That conclusion is not undermined by Mr. Forhan's argument that the notes must be public records because the Firm was the functional equivalent of a public office. A party asserting that a private entity is the functional equivalent of a public office has the burden of proving the facts supporting equivalence and overcoming a presumption against it. That requires proof of, among other things, what percentage the private entity's funding comes from public sources, and the degree and nature of the interactions between the private entity and public offices. See *Geauga Cty. Prosecutor's Office v. Munson Fire Dept.*, 2023-Ohio-3958, ¶¶ 8, 14-15, 17-20, adopted 2023-Ohio-4437 (Ct. of Cl.) and the cases discussed therein. Mr. Forhan has not provided any evidence on those points and hence has not carried this burden of proof, precluding any finding of functional equivalence.

{¶24} I therefore recommend that the court find that the Notes are not public records and that it not order the House to produce them.

## C. The Drafts are public records.

{¶25} The House urges the court to hold that the Drafts are not public records for the same reasons that it argued in connection with the Notes. That argument overlooks a large body of precedent and the evidence in this case.

{¶26} The Supreme Court has consistently treated drafts as public records. *State ex rel. Cincinnati Post v. Schweikert*, 38 Ohio St.3d 170, 173 and n.1 (1988); *State ex rel. Calvary v. City of Upper Arlington*, 89 Ohio St. 3d 229, 232 (2000); *State ex rel. Cincinnati Enquirer v. Dupuis*, 2002-Ohio-7041, ¶ 20; *Kish v. City of Akron*, 2006-Ohio-1244, paragraph 1 of syllabus, ¶¶ 2, 25-27; *State ex rel. Carr v. London Corr. Inst.*, 2015-Ohio-2363, ¶ 37. The House is asking the court to go against the weight of precedent.

{¶27} Moreover, it does so in a case where the evidence establishes all the elements of public record status. The Drafts are "records." They are documents or electronic records. *Perez Aff*, p. 6, ¶¶ 19-22. They are under the House's jurisdiction, as discussed above. They document the House's functions and activities, albeit through its quasi and actual agent. *Reichheld v. Spitzig*, 1994 Ohio App. LEXIS 5825, * 6 (9th Dist., Dec. 21, 1994) ("the relationship between an attorney and client is in . . . that of an agent and a principal"). They were "kept" by the House's quasi agent. *Perez Aff.* p. 6- ¶¶ 19-22; *Ferisse*, 2024-Ohio-5310, ¶ 19 (R.C. 149.43(A)(1) "does not require that the public office maintain actual possession of the record . . . a record is a public record, even in the possession of a private party, if that party came to have the record as result of the public office delegating one of its public functions to the private party"). The House is indisputably a "public office." In sum, the Drafts have all the elements of a public record

{¶28} I therefore recommend that the court find that the Drafts are public records.

**D. The House has not proven that the Drafts are trial preparation records.**

{¶29} The House argues that even if the Drafts are otherwise public records, it is not obligated to produce them because they are trial preparation records within the meaning of R.C. 149.43(A)(1)(g) and (4). The House has not met its burden of proving that.[3]

{¶30} The House had that burden. "If the public office . . . refuses to release the requested record on the basis of a statutory exemption, its burden of production in the R.C. 2743.75 proceeding is to . . . prove facts establishing that the requested record falls squarely within the exemption." *Welsh-Huggins*, 2020-Ohio-5371, ¶ 37. The public office must produce extrinsic evidence if the applicability of the exemption is "not obviously apparent and manifest just from the content of the record itself[.]" *Id*. at ¶ 35. See also *id*. at ¶¶ 30, 50, 53. "Unsupported conclusory statements in an affidavit are insufficient" to carry that burden. *Id*. at 35.

{¶31} That required proof that the Drafts were compiled for litigation purposes. R.C. 149.43(A)(4) provides that "'[t]rial preparation record' means any record that contains information that is *specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding*[.]" (Emphasis added). Consistent with that, "when an investigation has multiple purposes, the records of that investigation cannot be said to be trial preparation records." *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 14 (quoting *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd*., 63 Ohio St.3d 498, 502, (1992)). Consequently, "general fact-finding investigations do not produce trial-preparation records, as such investigations do not meet the 'specifically compiled' requirement of the statute." *Id*. (Quoting *State ex rel. Coleman v. Cincinnati*, 57 Ohio St.3d 83, 84 (1991); cleaned up). Those specific holdings combine with *Welsh-Huggins'* general evidentiary rules to require proof that the creation of the Drafts was motivated by specific litigation concerns.

---

[3] This and the succeeding section do not separately discuss the Notes because Mr. Forhan's failure to prove that the Notes were public records is dispositive of his claim for their production. That said, the analysis in this and the succeeding section would apply with equal force to the Notes.

{¶32} The House has not provided that proof. The report of the Cherry Investigation does not make any mention of litigation. Although the Forhan Report mentions that Mr. Forhan's behavior was egregious enough to result in a civil protection order, it specifically declined to address that order or its implications for the House. *Requester's Evidence*, p. 26. The House was therefore required to come forward with extrinsic evidence tying the investigations to litigation matters, but all it provided was conclusory statements in affidavits that did not identify any particular proceedings or explain how the matters complied in the investigations would be used in any case.

{¶33} I therefore recommend that the court find that the Drafts were not trial preparation records.

### E. The House has not proven that the Drafts are protected by the attorney-client privilege.

{¶34} The House similarly argues that even if the Drafts are otherwise public records, it is not obligated to produce them because they are exempted from the class of public records by R.C. 149.43(A)(1)(v) and the attorney client privilege. The House has not met its burden of proving that.

{¶35} A public office asserting an exemption from its general duty to provide access to public records bears "the burden . . . to plead and prove facts clearly establishing the applicability of the exemption." *Welsh-Huggins*, 2020-Ohio-5371, ¶ 27 (internal punctuation omitted). See also, *Id*. at ¶¶ 35, 54. That burden must be carried with "competent, admissible evidence[.]" *Id*. at ¶¶ 53, 77. The public office must produce extrinsic evidence if the applicability of the exemption is "not obviously apparent and manifest just from the content of the record itself[.]" *Id*. at, ¶ 35. See also *id*. at ¶¶ 30, 50, 53. "Unsupported conclusory statements in an affidavit are insufficient." *Id*. at 35.

{¶36} The office must make a strong showing to meet its burden. It "does not meet this burden if it has not proven that the requested records fall squarely within the exception," and the courts "resolve any doubt in favor of disclosure." *Id*. at ¶¶ 27, 63. See also *id*. at ¶¶ 50, 63. Given that, "it is not enough to say that a record is *probably* within a statutorily prescribed exemption[.]" *Id*. at ¶ 63 (emphasis sic.)

{¶37} Similar principles and standards control the attorney-client privilege. Because the privilege hinders the pursuit of the truth, claims of privilege are examined

"with the primary assumption that there is a general duty to give what [information] one is capable of giving, and that any exemptions . . . are distinctly exceptional[.]" *In re Story*, 159 Ohio St. 144, 148 (1953). In short, there "must be good reason, plainly shown" for applying the privilege. *Id*. at 149.

{¶38} Because of those principles, "the party claiming the privilege has the burden of proving that the privilege applies[.]" *Westfield Ins. Group v. Silco Fire & Sec*., 2019-Ohio-2697, ¶ 47 (5th Dist.) (authorities and internal punctuation omitted*); MA Equip. Leasing I, LLC v. Tilton*, 2012-Ohio-4668, ¶ 21 (10th Dist.). That requires proof of every element of the privilege. *Cincinnati Enquirer v. Hamilton Cty. Bd. of Commrs*., 2020-Ohio-4856, ¶ 20, adopted 2020-Ohio-5281(Ct. of Cl.). The privilege applies:

> "'(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.'" *State ex rel. Lanham v. DeWine*, 2013-Ohio-199, ¶ 27.

{¶39} The House has fallen well short of meeting those standards. The convergence of all those elements in any of the Drafts is not obviously apparent and manifest just from the content of the Drafts themselves. The House's extrinsic evidence does not fill that gap. It is overly generalized. It does not identify what information in the hundreds of pages of Drafts are supposedly privileged, let alone explain how those unidentified pieces of information have all the elements discussed above.

{¶40} I therefore recommend that the court reject the House's claim that the Drafts are protected by attorney-client privilege.

## III. Conclusion.

{¶41} In light of the foregoing, I recommend that the court:

A. Order respondent to produce copies of the Drafts of the Forhan and Cherry Investigations within 30 days of the entry of an order adopting this report and recommendation.

B. Order respondent to file an affirmation that it has taken that action within 40 days of the entry of a judgment adopting this report and recommendation.

C.      Order respondent to reimburse requester for his filing fee and costs.

D.      Order respondent to pay the balance of the costs of this case; and

E.      Deny all other relief.

{¶42} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

TODD MARTI
Special Master

**Filed August 26, 2025**
**Sent to S.C. Reporter 9/15/25**